T.C. Memo. 2003-124


UNITED STATES TAX COURT


GLORIA J. SPURLOCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6438-01.                    Filed April 29, 2003.


    P did not file Federal income tax returns for
1995, 1996, and 1997.  R issued a notice of deficiency
in which he determined that P received wages,
nonemployee compensation, and distributions from
individual retirement plans for each of the years.  R
based his determinations on third-party information
returns.

    <u>Held</u>:  Various third-party records that R offered
in support of his determinations are admissible
evidence under rules 803(6) and 902(11) of the Federal
Rules of Evidence, which allow the introduction of
records of a regularly conducted activity if, inter
alia, the records are accompanied by a written
declaration of their custodian or other qualified
person.

    <u>Held</u>, <u>further</u>, R's determinations of unreported
income are sustained.

    *Held*, *further*, the additions to tax under secs. 6651(a)(1) and 6654, I.R.C., are sustained.

    *Held*, *further*, sec. 6651(a)(2), I.R.C., provides for an addition to tax where a taxpayer fails to pay the amount shown as tax on any return.  P did not file returns; however, under sec. 6651(g), I.R.C., a return R prepares pursuant to sec. 6020(b), I.R.C., is considered a return for purposes of the addition to tax under sec. 6651(a)(2), I.R.C.  Under sec. 7491(c), I.R.C., R has the burden to initially come forward with evidence that it is appropriate to apply a penalty.  R failed to introduce evidence that returns showing an amount of tax were prepared and subscribed in accordance with sec. 6020(b), I.R.C.  See <u>Millsap v. Commissioner</u>, 91 T.C. 926 (1988); <u>Phillips v. Commissioner</u>, 86 T.C. 433 (1986), affd. in part and revd. in part on other grounds 851 F.2d 1492 (D.C. Cir. 1988).  Accordingly, the additions to tax under sec. 6651(a)(2), I.R.C., do not apply.


Gloria J. Spurlock, pro se.

<u>Frederick W. Krieg</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent issued a notice of deficiency to petitioner in which he determined the following Federal income tax deficiencies and additions to tax:

| Year | Deficiency | Additions to tax | | |
| | | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|---|---|---|---|---|
| 1995 | $2,747 | $533.75 | N/A | $112.10 |
| 1996 | 5,082 | 1,125.68 | To be determined. | 265.81 |
| 1997 | 3,149 | 539.55 | To be determined. | 123.81 |

We previously denied petitioner's motions for partial summary judgment in <u>Spurlock v. Commissioner</u>, 118 T.C. 155 (2002).  In

that opinion, we decided that tax liabilities shown on what petitioner claimed were section 6020(b)[1] returns did not affect whether there was a "deficiency" under section 6211(a) and that any amounts shown thereon were subject to the deficiency procedures. The issues for decision are: (1) Whether petitioner received unreported income in the form of wages, nonemployee compensation, and distributions from individual retirement plans; (2) whether petitioner is liable for additions to tax under sections 6651(a)(1) and (2) and 6654.

                        FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibit are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Louisville, Kentucky.

Petitioner did not file Federal income tax returns for her 1995, 1996, and 1997 tax years. Respondent commenced an examination of petitioner's 1995, 1996, and 1997 tax years at some point after July 22, 1998. On February 20, 2001, respondent issued a notice of deficiency to petitioner in which he determined: (1) Petitioner received nonemployee compensation of $7,515 in 1995 and $20,542 in 1996 from Ursuline Campus Schools, Inc. (Ursuline); (2) she received wages of $7,347 in 1995 and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.

$9,180 in 1997 from Ursuline and wages of $801 in 1995 and $1,335 in 1996 from The Louisville Orchestra (Orchestra); (3) she received taxable IRA distributions of $1,140 from Bank One Kentucky (Bank One) in 1995 and $10,750 from The Pioneer Group, Inc. (Pioneer) in 1997. Those determinations were made on the basis of Forms W-2, Wage and Tax Statement, Forms 1099-MISC, Miscellaneous Income, and Forms 1099-R, Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., that the various entities submitted.[2]

Ursuline prepared Forms W-2 stating it paid to petitioner wages of $7,347.50 in 1995 and $9,180 in 1997. Orchestra prepared Forms W-2 stating it paid to petitioner wages of $801 in 1995 and $1,335 in 1996. Ursuline prepared Forms 1099 stating it paid to petitioner nonemployee compensation of $7,515 in 1995 and $20,542 in 1996. Bank One prepared a Form 1099 stating it paid a taxable IRA distribution of $1,140 to petitioner in 1995. Pioneer prepared a Form 1099 stating it paid a taxable IRA distribution of $10,750.40 to petitioner in 1997. All the aforementioned amounts shown on the Forms W-2 were paid to petitioner as reported thereon.

---

[2]We point out that some of our findings of fact are made on the basis of petitioner's requested findings of fact to which respondent did not object. We note that she also objects to the admission of certain records which support some of her requested findings. We have admitted those documents. See infra pp. 8 to 16.

For each of the years at issue, entities were required to file a Form W-3, Transmittal of Wage and Tax Statements, in order to transmit any Form(s) W-2 to the Social Security Administration for processing. Entities were required to file a Form 1096, Annual Summary and Transmittal of U.S. Information Returns, to transmit any Form(s) 1099 to the Internal Revenue Service (IRS). The Forms W-3 and 1096 contain a "jurat" clause, which states: "Under penalties of perjury, I declare that I have examined this return and accompanying documents, and, to the best of my knowledge and belief, they are true, correct, and complete." The record does not contain any of the Forms W-3 or 1096 that the various entities submitted, and respondent cannot locate those forms in any of his files.

On February 7, 2002, respondent sent his trial memorandum to the Court and served a copy on petitioner. Respondent stated that "Some or all of the following witnesses may testify in this case" and listed Betty Harrison of Ursuline, Tonya N. McSorley of the Orchestra, Teresa LaChapelle of Pioneer, Dixie Wall or Teresa Brown of Bank One, and Revenue Agent Chris English. Respondent stated that his purpose for calling those witnesses was to establish the amounts paid to petitioner in 1995, 1996, and 1997, the sources, the reasons for payments, and the amounts withheld. Respondent also indicated that in lieu of testimony from those witnesses, he might introduce, under rules 803(6) and 902(11) of

the Federal Rules of Evidence, sworn affidavits for some or all of them with accompanying copies of custodial business records including copies of checks (front and back), Forms W-2 and 1099, accounting entries, and possibly other documentary evidence showing the amounts paid to petitioner in 1995, 1996, and 1997.

Before trial, respondent subpoenaed and received the affidavits and the records from Ms. Harrison, Ms. McSorley, and George Patenode. Ms. Harrison is the custodian of the personnel records of Ursuline. The statements in Ms. Harrison's affidavit are made in her capacity as the custodian of those personnel records and are made upon her knowledge and belief. Ms. McSorley is the custodian of the payroll records of the Orchestra. The statements in Ms. McSorley's affidavit are made in her capacity as the custodian of those payroll records and are made upon her knowledge and belief. Mr. Patenode is the custodian of the records of a transfer agent of Pioneer Investments, Pioneer Investments Management Shareholder Services (PIMSS). The statements in Mr. Patenode's affidavit are made in his capacity as the custodian of those records and are made upon his knowledge and belief.[3]

---

[3]In respondent's trial memorandum, he identified Teresa LaChapelle as the custodian of records for Pioneer. Ms. LaChapelle did not testify at trial and did not submit an affidavit or records. Mr. Patenode was not named in respondent's trial memorandum, and the record does not reflect how or when he succeeded to Ms. LaChapelle's position as custodian of records
(continued...)

The records, which were submitted with the affidavits, consist of: (1) Forms W-2, Forms 1099-MISC, and Forms 1099-R which relate to petitioner; (2) biweekly or semimonthly time reports from Ursuline which petitioner signed; (3) checks from Ursuline, the Orchestra, and Pioneer made out to the order of petitioner;[4] (4) various intraoffice memoranda, statements, and letters addressed to petitioner from Ursuline regarding petitioner's hourly rate of pay, terms of employment, and employment status; (5) a letter of resignation from a position as violin instructor addressed to Ursuline and signed by petitioner; (6) wage and tax registers, as well as autopay payroll registers, for the Orchestra; and (7) an IRA statement from Pioneer.

On February 19, 2002, petitioner filed a motion in limine in which she moved to exclude from evidence any affidavits and records respondent sought to introduce at trial. Respondent sent to petitioner the affidavits of Ms. Harrison and Ms. McSorley on Friday, February 22, 2002. Petitioner received those documents on February 23, 2002. Respondent sent to petitioner the affidavit of George Patenode on February 21, 2002, which she received on February 22, 2002. This case was called for trial on

---

[3](...continued)
relating to petitioner's alleged receipt of a taxable IRA distribution from Pioneer in 1997.

[4]Petitioner endorsed some of the checks, and some were apparently deposited without endorsement.

February 25, 2002.  At trial, respondent sought to introduce the affidavits of Ms. Harrison, Ms. McSorley, and Mr. Patenode and the records accompanying those affidavits under Fed. R. Evid. 803(6) and 902(11).[5]  We withheld ruling on the admissibility of the affidavits and the records at trial and instead allowed the parties an opportunity to brief the evidentiary issues presented.

Petitioner did not testify, did not have witnesses, and did not introduce documentary evidence regarding her income or lack thereof at trial.[6]

OPINION

A.  Evidentiary Issues

Respondent sought to introduce sworn affidavits and various business records relating to petitioner under Fed. R. Evid. 803(6) and 902(11).  Rule 902(11) of the Federal Rules of Evidence (Fed. R. Evid.) provides in relevant part:

---

[5]No representative or agent of Bank One testified at trial or submitted any affidavits or records.  Revenue Agent Chris English did not testify at trial and did not submit an affidavit or other records.

[6]The Court engaged in an extended colloquy with petitioner regarding whether she wished to testify under oath.  After we permitted petitioner a recess to make her decision, petitioner decided not to testify.

RULE 902.  Self-Authentication

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

*      *      *      *      *      *      *

(11)  Certified domestic records of regularly conducted activity.--The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B)  was kept in the course of the regularly conducted activity; and

(C)  was made by the regularly conducted activity as a regular practice.

*      *      *      *      *      *      *

Fed. R. Evid. Rule 803(6) provides:

RULE 803.  Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

*      *      *      *      *      *      *

(6)  Records of regularly conducted activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course

of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Petitioner objects to the introduction of the affidavits and the accompanying records on the ground that those affidavits fail to satisfy the substantive requirements of Fed. R. Evid. 803(6) and 902(11).[7] She claims that the affidavits fail to state that the affiants had personal knowledge of the facts recorded in the records or otherwise identify the employee who had personal knowledge of the facts; that they fail to state what is the "regularly conducted business activity" of the payors; and that they fail to state in what manner the records are kept.

Our examination of the affidavits and the attached records reveals that those records were kept in the course of regularly conducted business activities. We are satisfied that the various payors are each a "business" for purposes of Fed. R. Evid. 803(6) and 902(11). Moreover, those rules do not require that the

---

[7]We recently applied Fed. R. Evid. 803(6) and 902(11) in the case of records kept by an agency of the United States. Clough v. Commissioner, 119 T.C. 183 (2002). The instant case involves records kept by private third-party recordkeepers.

custodian of the records have personal knowledge of the facts recorded. The rules require only that the custodian certify the records were made by a person with knowledge of the matters recorded. The custodians here certify under penalties of perjury that the records were made and kept in the course of business by an employee or representative of the business who had personal knowledge of the facts recorded. This is sufficient, and the affidavits need not identify by name that employee or representative.[8]

In addition, many of the records that the affiants produced are admissible and can be authenticated under other parts of Fed. R. Evid. 901 and 902. Under Fed. R. Evid. 901(a), the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901(b) provides examples of authentication or identification conforming with the requirements of this rule including nonexpert opinions as to the genuineness of handwriting; comparison by the trier of fact with specimens which have been authenticated; and appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

---

[8]We note that the affidavit from Ms. McSorley identifies Mona Griffin as the bookkeeper who had knowledge of the facts recorded in the records.

We have compared what purports to be petitioner's signatures on many of the checks, the time reports, and the letter of resignation to petitioner's signatures on her petition and other documents submitted to this Court.  We find that those signatures are identical in all respects, and those items are authenticated pursuant to the general provisions of Fed. R. Evid. 901.

Checks are self-authenticating documents under Fed. R. Evid. 902(9).[9]  United States v. Hawkins, 905 F.2d 1489, 1494 (11th Cir. 1990); United States v. Little, 567 F.2d 346 n.1 (8th Cir. 1977).  The copies of checks respondent introduced are not hearsay or, alternatively, are covered by exceptions to the hearsay rule.  A check is a negotiable instrument, a legally operative document, and falls within the category of "verbal acts" which are excludable from the hearsay rule.  See Advisory Committee's Note to Fed. R. Evid. 801(c).  The checks or any notations thereon may also qualify as a statement in documents affecting an interest in property under Fed. R. Evid. 803(15).  With respect to the other documents that contain petitioner's signature, those documents are not hearsay.  See Fed. R. Evid.

---

[9]Under Fed. R. Evid. 902(9), extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

801(d)(2)(B).[10]  We find that the records submitted with the affidavits meet the substantive requirements of Fed. R. Evid. 803(6) and 902(11), and, with respect to some of those records, are admissible and authenticated under other Rules of the Federal Rules of Evidence.[11]

Petitioner also argues that the affidavits and the underlying records should be excluded because those items were not furnished to her in a time sufficient for her to challenge fairly the adequacy of their foundation, and she was unduly prejudiced as a result.  Petitioner relies on the notice requirement of Fed. R. Evid. 902(11) as a basis for the exclusion of the affidavits and the records.

The notice requirement of Fed. R. Evid. 902(11) provides:

> A party intending to offer a record into evidence under
> this paragraph must provide written notice of that
> intention to all adverse parties, and must make the
> record and declaration available for inspection

---

[10]Under Fed. R. Evid. 801(d)(2)(B), a statement is not hearsay if the party-opponent has manifested an adoption or belief in its truth.

[11]Petitioner claims that the affidavits are "inherently untrustworthy and unreliable."  She cites to Ursuline's change in reporting her employment status from employee to independent contractor and back to employee, the failure of the affiants to produce all the checks purportedly issued to petitioner, the fact that some of the checks are unendorsed, and the failure of the affiants to produce copies of the Forms W-3 and 1096 used to transmit the Forms W-2, 1099-MISC, and 1099-R.  We cannot agree that those circumstances indicate an inherent lack of trustworthiness or reliability.  This is especially true where, as here, petitioner's signature appears on many of the records produced.

> sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

The notice requirement contemplates that a proponent of evidence provide not only the records which he seeks to introduce but also the declaration of the custodian "sufficiently in advance of their offer into evidence".[12]

We find that respondent has met the notice requirement.  He provided written notice to petitioner of the possibility of his introducing evidence under Fed. R. Evid. 803(6) and 902(11) on February 7, 2002, more than 2 weeks before trial.  He identified the declarants, the payors involved, and the underlying records that might be introduced through the affidavits.  Petitioner was adequately apprised of this information in advance of trial.  Petitioner had sufficient time to contact the witnesses named in respondent's trial memorandum, and she could have called those witnesses to testify at trial.

Respondent provided the affidavits and the records to petitioner 2 and 3 days before trial.  Given the nature of the affidavits and the records involved, petitioner had sufficient time in which to review those documents and to formulate challenges to their veracity.  The affidavits and the records

---

[12]The Advisory Committee's Note to Fed. R. Evid. 902(11) states that "The notice requirement * * * is intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration."

themselves are not lengthy, and each involves matters which should be familiar to petitioner: (1) Her association with the payors; (2) the hours she recorded and the time reports that she submitted; (3) checks made out to the order of petitioner; (4) a statement regarding a substantial IRA distribution; and (5) copies of Forms W-2, 1099-MISC, and 1099-R. We hold that the affidavits and the records were provided to petitioner sufficiently in advance of their offer into evidence and that petitioner had a fair opportunity to challenge those documents.

Petitioner also argues that we should exclude the records, because respondent failed to comply with our standing pretrial order requiring the exchange of documents 15 days prior to trial. We do not find exclusion of respondent's evidence to be a proper remedy for his delay, especially considering the nature of the documents involved.[13] Petitioner was given ample notice, well in advance of trial, of the specific amounts and sources of her income as respondent determined. When she was requested to admit these facts, she responded: "Denies, with the qualification that Petitioner neither possesses sufficient documentary evidence nor has sufficient recollection that would cause her to truthfully

---

[13]Petitioner also contends that respondent failed to supplement his answers to her interrogatories with respect to the evidence submitted with the affidavits. We disagree. Respondent's answers to those interrogatories contemplate that he would seek to obtain the underlying records of the various entities, and his answers inform petitioner of the general nature of those records.

admit the alleged fact."  She has offered no testimony or documents that bear on her income for the years in issue.  In our discretion, we shall not exclude the affidavits and the underlying records that respondent introduced for any noncompliance with respect to the notice requirement or our standing order.[14]

B.  Whether Petitioner Received Unreported Income as Determined

Gross income includes "all income from whatever source derived" including compensation for services.  Sec. 61(a); Grimes v. Commissioner, 82 T.C. 235, 237 (1984).  Gross income also includes any amount paid or distributed out of an individual retirement plan.  Sec. 408(d)(1).  Respondent determined that petitioner received wages, nonemployee compensation, and taxable distributions from an individual retirement plan.  Petitioner disputes that she had taxable income for the tax years in issue and that she was required to file a Federal income tax return for those years.  Petitioner argues that the determinations respondent made are arbitrary and erroneous, since they are based

---

[14]Petitioner also seeks to exclude the affidavit of George Patenode on the grounds that respondent failed to name Mr. Patenode as a witness in his trial memorandum.  We cannot agree that this failure is a basis for exclusion.  The choice of affiants and the identity of the custodian of records are matters peculiar to the particular business.  It is sufficient that respondent stated his intention to subpoena the affidavit and records from the custodian of records for Pioneer.

solely on information returns that third-party payors fraudulently or erroneously filed.

Under section 7491(a), the burden of proof with respect to any factual issue shifts to the Commissioner if the taxpayer introduces credible evidence with respect to that issue. However, section 7491(a) does not apply unless the taxpayer has maintained all records required under the Code and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(B). Petitioner did not testify, she called no witness, and she presented no credible evidence relevant to any factual issue in this case. Further, the record reflects that petitioner failed to cooperate with respondent in providing information relating to her 1995, 1996, and 1997 tax years. For example, petitioner answered 23 of respondent's 26 requests for admissions: "Denies, with the qualification that Petitioner neither possesses sufficient documentary evidence nor has sufficient recollection that would cause her to truthfully admit the alleged fact." Those requests for admissions concerned petitioner's relationship with the payors, whether she received income from those entities in the amounts determined, and whether she received Forms W-2, 1099-MISC, and 1099-R from those payors. We find that section 7491(a) is not applicable to this case.

Under section 6201(d), if the taxpayer asserts a "reasonable dispute" with respect to any item of income reported on a third-party information return and the taxpayer has "fully cooperated" with the Secretary, the Secretary shall have the burden of producing reasonable and probative information concerning a deficiency in addition to the information return. See Gussie v. Commissioner, T.C. Memo. 2001-302. Petitioner makes general and unsubstantiated assertions that the information returns involved in this case are fraudulent. However, she does not claim to have made known her dispute to the third parties who prepared them. She has not "fully cooperated" with the Secretary in providing information relating to her 1995, 1996, and 1997 tax years. We conclude that section 6201(d) is not applicable.

Absent application of those special statutory provisions, the Commissioner's determinations in a notice of deficiency generally are presumptively correct, and the taxpayer has the burden of proving that those determinations are erroneous or arbitrary. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Kearns v. Commissioner, 979 F.2d 1176, 1178 (6th Cir. 1992), affg. T.C. Memo. 1991-320. However, the Commissioner cannot rest on the presumption of correctness alone where the taxpayer challenges the determinations of unreported income made in the notice of deficiency. United States v. Walton, 909 F.2d 915, 919 (6th Cir. 1990); Dellacroce v. Commissioner, 83 T.C.

269, 280 (1984).  In certain circumstances, courts have required a minimal factual foundation for the Commissioner's determinations before the presumption of correctness attaches to the notice of deficiency.  See Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991), affg. in part, revg. in part, and remanding T.C. Memo. 1990-68; United States v. Walton, supra; Anastasato v. Commissioner, 794 F.2d 884 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101; Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977).  Even if we were to assume that those decisions apply to this case, we find that respondent has provided an evidentiary foundation for his determinations.

Petitioner admits in her requested findings of fact that each of the various entities submitted Forms W-2 and/or 1099 which reported wages, nonemployee compensation, and taxable IRA distributions paid to petitioner and that respondent relied on those forms in making his determinations.  Respondent's reliance on those information returns provides an evidentiary basis for respondent's determinations.[15]  Further, the records and

_____

[15]Petitioner claims that unsubstantiated statements that petitioner received income, which statements the alleged payors made on Forms W-2 and 1099, are not sufficient alone to support respondent's determinations, relying on Portillo v. Commissioner, 988 F.2d 27 (5th Cir. 1993), revg. T.C. Memo. 1992-99.  However, the result reached in Portillo does not apply where, as here, the taxpayer fails to file tax returns stating he or she did not receive the income in question.  Parker v. Commissioner, 117 F.3d
(continued...)

documents that respondent introduced through the affidavits provide ample evidentiary support for his determinations. Respondent has satisfied any burden of production which he may initially bear under the cases cited above.

Petitioner also contends that respondent, in making his determinations, arbitrarily relied on the Forms W-2 and 1099 that the payors submitted without ascertaining whether those entities submitted Forms W-3 and 1096, signed under penalties of perjury. Petitioner also suggests that respondent's determinations are arbitrary in that he failed to ascertain whether the payors were on his "Bad Payor List".[16] We disagree and hold that respondent's determinations are not per se arbitrary where he fails to ascertain whether the third-party payors submitted Forms W-3 and 1096 with the information returns or whether those payors are on his "Bad Payor List". In the instant case, there is no evidence that any of the payors were on respondent's "Bad Payor

_____

[15](...continued)
785, 787 (5th Cir. 1997), affg. an unpublished order of this Court. Congress, in enacting sec. 6201(d), has also recognized that in the absence of that Code section's application, the burden of proving that determinations of unreported income are arbitrary or incorrect generally remains on the taxpayer where the Commissioner relies solely on information returns that third parties submitted.

[16]The Commissioner maintains a "Bad Payor List", which includes those persons and entities that have previously submitted false, fraudulent, inaccurate, or mistaken information to the Social Security Administration or the IRS on Forms W-2 or 1099.

List", and petitioner has presented no evidence, and she alleges no specific instances, wherein those entities that paid income to her submitted false, fraudulent, inaccurate, or mistaken information to the Social Security Administration or the IRS. Respondent's determinations are not arbitrary on this basis.

Petitioner has failed to persuade us that respondent's determinations are arbitrary or erroneous. Petitioner did not testify at trial, produced no evidence, called no witnesses, and has hedged her responses to respondent's requests for admissions with her purported failed recollection of employment and receipt of income, as well as her inadequate recordkeeping. Accordingly, we sustain respondent's determinations, and we hold that petitioner received nonemployee compensation of $7,515 in 1995 and $20,542 in 1996 from Ursuline; that she received wages of $7,347 in 1995 and $9,180 in 1997 from Ursuline and wages of $801 in 1995 and $1,335 in 1996 from the Orchestra; and that she received taxable IRA distributions of $1,140 from Bank One in 1995 and $10,750 from Pioneer in 1997.

C. Additions to Tax and Penalty

Section 7491(c) applies with respect to the additions to tax and the penalty in this case, since the examination commenced after July 22, 1998, the effective date of that provision. Internal Revenue Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. Accordingly, respondent

bears the burden of production and must come forward with sufficient evidence to show that the additions to tax and the penalty are appropriate.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  However, respondent does not bear the burden of proof as to the additions to tax and the penalty, and once he meets his initial burden of production, petitioner must come forward with evidence sufficient to persuade us that those additions to tax and the penalty do not apply.  Id. at 447.

Section 6651(a)(1) provides for an addition to tax in the case of a failure to file a required return on the prescribed due date.  Once the Commissioner meets his initial burden of production with respect to this addition to tax, the taxpayer bears the "heavy burden" of proving that the failure to file the required return did not result from willful neglect and that the failure was due to reasonable cause.  United States v. Boyle, 469 U.S. 241, 245 (1985); Higbee v. Commissioner, supra at 447.

Petitioner did not file Federal income tax returns for her 1995, 1996, and 1997 tax years, and respondent has presented evidence that petitioner received taxable income in amounts sufficient to require her to file returns for those years.  Thus, we find that respondent has met his burden of production as to the section 6651(a)(1) additions to tax.  Petitioner presented no evidence at trial, and she did not testify regarding her failure to file returns.  She asserts only that she did not have taxable

income in amounts sufficient to require her to file returns for the years at issue. Petitioner has not established that her failure to file a return was due to reasonable cause and not willful neglect, and we sustain the section 6651(a)(1) additions to tax as determined.

Section 6651(a)(2) provides for an addition to tax in the case of a failure to pay an amount of tax shown on any return. Respondent claims that he has met his burden of production under section 7491(c) with respect to the section 6651(a)(2) additions to tax. In his opening brief at 11, his complete argument was as follows:

> Respondent has met his burden of production with respect to asserted I.R.C. §§ 6651(a)(1), (a)(2), and 6654 additions to taxes.
>
> By I.R.C. § 7491(c) Respondent has the burden of production with respect to any penalty, addition to tax, or additional amounts. The "burden of production" is not the same as the "burden of proof." The burden of production is less strenuous than the burden of proof, requiring only that Respondent come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax. Higbee v. Commissioner, 116 T.C. at 446-47. Respondent has shown that Petitioner did not file any income tax returns during these years and that she earned sufficient income to require her to file returns. (Exhibit 5-R, Certified Certificate of No Record; Prof. Exs. 7-R, 8-R, 9-R; Presumption of Correctness, see Argument I.) Thus, Respondent's burden of production has been met. See Higbee v. Commissioner, 116 T.C. at 446-47; Lutz v. Commissioner, T.C. Memo. 2002-89.

Also, in respondent's answering brief at 40, his only argument regarding the section 6651(a)(1) and (2) additions to tax was as follows:

> Under I.R.C. § 7491(c), Respondent has the burden of production with respect to any penalty, addition to tax, or additional amounts. The burden of production is not the same as the burden of proof. The burden of production is less strenuous than the burden of proof, requiring only that Respondent come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty or addition to tax. Higbee v. Commissioner, 116 T.C. 438 (2001). Respondent has shown that Petitioner did not file any income tax returns during these years and that she earned sufficient income to require her to file returns. (Stip. Para. 2; Ex. 5-R, Certified Certificate of No Record; Prop. Exs. 7-R, 8-R, and 9-R; Transcript). See Presumption of Correctness, Argument I, Brief for Respondent. Thus, Respondent's burden of production has been met. See Higbee v. Commissioner, 116 T.C. at 446-47; Lutz v. Commissioner, T.C. Memo. 2002-89.

Respondent misunderstands the requirements of section 6651(a)(2), and he fails to respond to petitioner's arguments on brief which do in fact recognize those requirements. Respondent fails to recognize that section 6651(a)(2) applies only in the case of an amount of tax shown on a return. Burr v. Commissioner, T.C. Memo. 2002-69, affd. 56 Fed. Appx. 150 (4th Cir. 2003); Heisey v. Commissioner, T.C. Memo. 2002-41, affd. ___ Fed. Appx. ___ (9th Cir. 2003); Watt v. Commissioner, T.C. Memo. 1986-22. Indeed, respondent's arguments on brief are the same arguments that the Commissioner made, and which we rejected, in Heisey v. Commissioner, supra. Suffice it to say, a failure to

file Federal income tax returns and a failure to pay the correct amount of tax are insufficient alone to justify the imposition of additions to tax under section 6651(a)(2).

Under section 6651(g)(2), a return the Secretary prepared under section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2).[17] Respondent claims that he prepared substitutes for return (SFR) for 1996 and 1997 that meet the requirements of section 6020(b). However, respondent did not introduce those alleged SFRs into evidence, and he did not request any findings that he made section 6020(b) returns. Instead, his only reference to section 6020(b) returns appears only in his answering brief at 24, wherein his response to petitioner's requested finding that respondent did not make section 6020(b) returns for 1996 and 1997 was as follows:

> Respondent made I.R.C. § 6020(b) returns for 1995, 1996, and 1997. See Pet. Para. 5(b) and Ans. Para.

---

[17]Sec. 6651(g) provides:

> SEC. 6651(g). Treatment of Returns Prepared by Secretary Under Section 6020(b).--In the case of any return made by the Secretary under section 6020(b)--

> > (1) such return shall be disregarded for purposes of determining the amount of the addition under paragraph (1) of subsection (a), but

> > (2) such return shall be treated as the return filed by the taxpayer for purposes of determining the amount of the addition under paragraphs (2) and (3) of subsection (a).

5(b)).  Although not evidence, see also <u>Spurlock v. Commissioner</u>, 118 T.C. No. 9 (Feb. 15, 2002), wherein the Court found that Respondent had made I.R.C. § 6020(b) returns for 1995, 1996, and 1997.

In petitioner's motions for partial summary judgment, her litigating position was that the SFRs that respondent prepared were section 6020(b) returns.  <u>Spurlock v. Commissioner</u>, 118 T.C. 155 (2002).  We addressed and denied petitioner's motions on the <u>assumption</u> that there were SFRs that qualified as section 6020(b) returns.  However, contrary to respondent's reading of our opinion, we expressly declined to decide whether those SFRs met the requirements of section 6020(b).  In <u>Spurlock v. Commissioner</u>, <u>supra</u> at 157 n.3, we stated that "Both parties agree that respondent filed sec. 6020(b) returns for the years in issue; however, we do not decide whether those 'returns' meet the requirements of sec. 6020(b)."  Since respondent has failed to produce any evidence that a "return" was filed, we hold that the section 6651(a)(2) additions to tax for failure to pay tax shown on a return is inapplicable.

The documents that respondent alleges that he prepared as SFRs are attached to his response to petitioner's motion for partial summary judgment for 1996 and 1997.  Even if those documents were considered, we cannot agree that they meet the requirements of section 6020(b).  We previously addressed what constitutes a section 6020(b) return in <u>Millsap v. Commissioner</u>, 91 T.C. 926 (1988), and <u>Phillips v. Commissioner</u>, 86 T.C. 433

(1986). In <u>Phillips v. Commissioner</u>, <u>supra</u> at 437-438, we held that a "dummy return", i.e., page 1 of a Form 1040 showing only the taxpayer's name, address, and Social Security number, was not a section 6020(b) return.[18] In <u>Millsap v. Commissioner</u>, <u>supra</u>, the Commissioner prepared a Form 1040 and attached a revenue agent's report which contained sufficient information from which to compute the taxpayer's tax liability. The attached report was subscribed, and we held that the Form 1040 together with the attached revenue agent's report containing information from which the tax could be computed met the requirements for a section 6020(b) return. The same elements we found necessary to constitute a section 6020(b) return in <u>Millsap v. Commissioner</u>, <u>supra</u>, and <u>Phillips v. Commissioner</u>, <u>supra</u>, are generally required for purposes of a section 6020(b) return in the context of section 6651(a)(2) and (g)(2). Namely, the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a "return". The mere fact that respondent's files contain information upon which a tax might be

---

[18]A "dummy return" is "generated to open up an account for the taxpayer on the master file, and normally consists of a first page of a Form 1040 which contains a taxpayer's name, address and social security number." Internal Revenue Manual, Chief Counsel Directives Manual-Tax Litigation, sec. 35.4.27.2 (Nov. 16, 1999).

determined does not transform his files into a section 6020(b) return. See Cabirac v. Commissioner, 120 T.C. ___ (2003).

The documents attached to respondent's response to petitioner's motion for partial summary judgment for 1996 and 1997 consist of: (1) Half-page printouts of numerous codes and information which the Court is unable to translate; (2) portions of pages 1 of Forms 1040, each of which contains petitioner's name, address, Social Security number, and filing status; (3) computer-generated Forms 5344(CG), Examination Closing Record, each of which contains numerous codes and listings including petitioner's tax liability, penalty, and interest adjustments, credit and tax computation adjustments; (4) manually completed Forms 5344 signed by a tax examiner containing codes and information which the Court is also unable to translate; (5) a Form 4549-CG, Income Tax Examination Changes; and (6) a Letter 915(DO)(CG) (the "30-day letter")[19] for petitioner's 1995, 1996, and 1997 tax years. Only the Form 5344 document and the 30-day letter were signed.[20]

The dates which appear on the numerous documents that respondent alleged to be section 6020(b) returns do not match;

---

[19]Letter 915(DO)(CG) provides notice to the taxpayer of proposed adjustments to his or her tax liability. The letter is commonly referred to as a "30-day letter", because the taxpayer has 30 days to agree or disagree with the proposed adjustments.

[20]Respondent's revenue agent, Chris English, signed the 30-day letter.

indeed, the date entries span several years.  The half-page printouts are dated November 22, 2000.  Those printouts contain the notation "Received-Date:  10071999".  Each of the Forms 1040 is dated September 23, 1999.  The computer-generated Forms 5344(CG) contain no date.  The manually completed Forms 5344 are dated May 31, 2001.  The Form 4549-CG contains income tax examination changes for 1995, 1996, and 1997.  Page 1 of that form contains no date.  Page 2 of that form is dated October 18, 1999.  The pages attached to that form, which contain computations relating to the income tax examination changes, are also dated October 18, 1999.  The 30-day letter is dated October 18, 1999.  We cannot agree that this conglomeration of documents, which appears to be respondent's administrative file, would satisfy the requirements of section 6020(b) even if it were in evidence.  See Cabirac v. Commissioner, supra.

Section 6654(a) provides for an addition to tax in the case of an underpayment of estimated tax.  We find that respondent has satisfied his burden of production with respect to the addition to tax under section 6654(a) for each of the tax years at issue.  Petitioner did not file Federal income tax returns for 1995, 1996, and 1997, and she did not pay taxes on income other than those amounts the various payors withheld.[21]  Further, respondent

---

[21]The Forms W-2 that Ursuline prepared show Federal income tax withheld of $582.78 for 1995 and $751.29 for 1997.  The Forms
(continued...)

has presented evidence that petitioner's tax liability exceeded the amounts the various payors withheld.  Petitioner failed to pay any estimated tax with respect to the nonemployee compensation Ursuline reported or with respect to the IRA distributions Bank One and Pioneer reported.  Petitioner did not file any estimated income tax returns for those years. Petitioner has neither argued nor has she presented any evidence to substantiate that she falls within any of the exceptions to section 6654 discussed in Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).  See sec. 6654(e); sec. 301.6654-2, Proced. & Admin. Regs.  We sustain the additions to tax under section 6654(a) as determined.

Respondent requests that we impose a penalty under section 6673(a)(1) upon petitioner.  Section 6673 provides that the Court may impose a penalty of up to $25,000 whenever it appears that-- (A) proceedings have been instituted or maintained by the taxpayer primarily for delay, or (B) the taxpayer's position is frivolous or groundless.  Considering the particular facts and arguments in this case, we find that petitioner had no good faith ground for her argument that she did not receive the income respondent determined.  That income is clearly established by the evidence, and petitioner did not attempt to offer any

---

[21](...continued)
W-2 that the Orchestra prepared show Federal income tax withheld of $30.17 for 1995 and $79.85 for 1996.

evidence to the contrary.  We therefore impose a section 6673(a)(1) penalty in the amount of $1,000.

An appropriate order will be issued denying petitioner's motion in limine, and a decision will be entered for respondent except for the additions to tax under section 6651(a)(2), which do not apply.