**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-2

UNITED STATES TAX COURT

BERNARD L. BERKS AND CLAIRE BERKS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26883-11S.                    Filed January 6, 2014.

Charles A. Koenig, for petitioners.

Anita A. Gill and Nancy P. Klingshirn, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $27,168 in petitioners' Federal income tax for 2009 and an accuracy-related penalty of $5,434 pursuant to section 6662(a). Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a).

The issues remaining for decision are whether petitioners (1) received taxable distributions of $48,700 and $28,923 (totaling $77,623) from their individual retirement accounts (IRAs) as reported by Trust Company of America (TCA) on Forms 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., and (2) are liable for an accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in Ohio. This case was

---

[1](...continued)
Code (Code), as amended and in effect for 2009, and Rule references are to the Tax Court Rules of Practice and Procedure.

consolidated for purposes of trial with that of Steven C. and Constance L. Gist, docket No. 16065-12S.

## I. Petitioners' IRA Investments

In the late 1990s petitioners' financial adviser, J. Richard Blazer, presented them with a proposal to invest in various real estate partnerships. Mr. Blazer is the president of the Ohio Co., a venture capital firm. Petitioners have known Mr. Blazer since the mid-1980s and consider him a friend.

Petitioners decided to invest, and with Mr. Blazer's help they transferred or "rolled over" money from preexisting IRAs into separate self-directed IRA accounts that they opened with TCA. Mr. Blazer recommended TCA to petitioners because it would accept promissory notes in IRA accounts for which it served as custodian and he had a good working relationship with the firm. TCA recognized Mr. Blazer as petitioners' authorized representative.

Dr. and Mrs. Berks transferred approximately $63,000 and $28,000, respectively, to their TCA accounts, and those funds in turn were transferred to five different partnerships in exchange for promissory notes.[2] The promissory notes purportedly matured five years from the date of issuance and provided for relatively high interest rates (10% to 12% per annum) which would accrue and

---

[2]The promissory notes are not part of the record.

would be paid only if and when the underlying properties were developed or sold. Dr. Berks could not recall any details regarding the nature or location of the real estate that the partnerships owned or ever receiving any documentation regarding the properties.

## II. Mr. Blazer's Testimony

Mr. Blazer testified that the investments he had presented to petitioners were speculative and that he counseled them to sprinkle their investments among several partnerships to minimize the risk of loss. Mr. Blazer was a general partner in each of the partnerships in question.

Mr. Blazer provided TCA with original promissory notes and related private placement memoranda for petitioners' investments. He instructed TCA to value the promissory notes at book value for tax accounting purposes.

Mr. Blazer testified that between 2001 and 2006 all of the partnerships failed for various reasons and that the promissory notes held in petitioners' IRA accounts had become worthless. For example, Mr. Blazer testified that a partner in a partnership referred to as Liberty Concord Venture defrauded the remaining partners by surreptitiously taking mortgage loans on the partnership's property. The mortgage on the property subsequently was foreclosed when that partner failed to repay the loans and filed for bankruptcy. In another instance, Mr. Blazer

testified that the partnership owned 50% of the subject property and that he (as the general partner) had decided to "let the property go" or simply revert to the individual holding the other 50% ownership interest in the property because development costs were too high. Mr. Blazer testified that the remaining partnerships failed and that the properties they invested in were lost in foreclosure proceedings.

III. Communications With TCA

As the promissory notes in petitioners' IRA accounts matured, TCA inquired whether the notes would be renewed. Mr. Blazer testified that he had held numerous telephone conversations with TCA representatives informing them that the partnerships "were no longer in business" and that the promissory notes in petitioners' accounts had become worthless and would not be renewed.

Dr. Berks testified that Mr. Blazer informed him in early 2007 that the promissory notes held in his and Mrs. Berks' IRA accounts had become worthless. In February 2007 Mr. Blazer directed Dr. and Mrs. Berks to sign separate letters addressed to TCA requesting that their IRA accounts be "terminated". Mr. Blazer sent the letters to TCA under the cover of his own letter stating that petitioners' IRA accounts should be terminated because the partnerships that issued the

promissory notes were no longer in business. TCA declined to close or terminate the accounts based on Mr. Blazer's letter.

TCA sent a letter to Dr. Berks dated August 27, 2009, stating in relevant part:

> We recently sent a letter to you requesting information regarding the following asset(s) that is/are currently held in your account with Trust Company of America, as your IRA Custodian.

> | Asset Name | Asset Value |
> | --- | --- |
> | Grand Circuit Properties, Ltd 10% | $5,000.00 |
> | Liberty Concord Venture | $10,000.00 |
> | National Investments Management Grp 10% | $47,000.00 |
> | National Investors Und III | $1,700.00 |

> We have not received a response to our inquiry. Please provide a written explanation of the current status of this asset within the next 30 days on the enclosed form to avoid further actions. If you have supporting documentation, please forward copies with your response.

Dr. Berks testified that he forwarded the letter from TCA to Mr. Blazer so that he could respond to the inquiry.

Mr. Blazer wrote a letter to TCA dated November 2, 2009, stating: "We have informed Trust Company of America on 3 different occasions that Liberty Concord Venture does not exist. This project was dissolved in 2001. Attached is another letter sent February 2007."

TCA sent a letter to Mrs. Berks dated December 11, 2009, stating in relevant part:

> We have made multiple requests for information on the following asset/assets held in your account:
>
> Asset Name                                               Asset Value
> National Investments Management Grp 10%          $28,923.00
>
> As per our prior notification, Trust Company of America is immediately resigning as your IRA custodian.
>
> For each asset above, please find enclosed:
> - Any original document that was being held in our vault (if one was in our possession)
> - Assignment of promissory note interest, granting ownership of the asset to you as an individual
>
> Your account will be closed and you will receive one final statement. You will also receive a Form 1099R, which will be reported to the IRS to reflect the distribution of the asset from your account.

Dr. Berks testified that neither he nor Mrs. Berks received cash, property, or any documents from TCA when their IRA accounts were closed.

IV. Petitioners' Tax Return

TCA issued Forms 1099-R to Dr. and Mrs. Berks reporting that they had received taxable distributions from their retirement accounts of $48,700 and $28,923, respectively, in 2009.[3] Petitioners filed a timely joint Form 1040, U.S.

---

[3]It appears that Dr. Berks' investments in Grand Circuit Properties, Ltd., and Liberty Concord Venture, totaling $15,000, were not included in the amount

(continued...)

Individual Income Tax Return, for 2009. Petitioners' tax return was prepared and signed by Gilbert Holcomb, a certified public accountant. Although petitioners reported an IRA distribution of $77,623 on line 15a of their return, they reported on line 15b that none of the distribution was taxable. Dr. Berks testified that he did not review the return in detail before signing it. Mrs. Berks did not testify at trial.

## Discussion

### I. IRA Distributions

The term "gross income" is broadly defined in the Code to include all income from whatever source derived. Sec. 61(a). In accordance with section 408(d)(1), an amount received as a distribution from an IRA must be included in gross income and is taxable to the recipient in the manner provided in section 72. See sec. 1.408-4(a), Income Tax Regs.

The Commissioner's determination of a taxpayer's liability in a notice of deficiency normally is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect.[4] Rule 142(a); Welch v. Helvering, 290

---

[3](...continued)
reported in the Form 1099-R issued in respect of his IRA account.

[4]Given that petitioners challenge respondent's determination of unreported
(continued...)

U.S. 111, 115 (1933).  Section 7491(a) provides that the burden of proof may shift

to the Commissioner, however, as to any factual issue relevant to a taxpayer's

liability for tax if the taxpayer (1) introduces credible evidence with respect to that

issue, and (2) satisfies certain other conditions, including substantiation of any

item and cooperation with the Government's requests for witnesses, documents,

other information, and meetings.  Sec. 7491(a)(1) and (2); see also Rule 142(a)(2).

The taxpayer bears the burden of proving that the requirements of section 7491(a)

have been met.  See Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668

F.3d 888 (7th Cir. 2012).  In addition, if a taxpayer raises a reasonable dispute

with respect to a third-party information return (such as the Forms 1099-R in

dispute) and has otherwise fully cooperated with the Commissioner, the burden of

production may shift to the Commissioner to present reasonable and probative

evidence to verify the information return.  Sec. 6201(d).[5]

---

[4](...continued)
income, and for the sake of completeness, we note that the Forms 1099-R served
as an adequate evidentiary basis for the notice of deficiency and respondent
otherwise presented a minimum factual foundation so that the normal presumption
of correctness attaches to the notice of deficiency.  See, e.g., Spurlock v.
Commissioner, T.C. Memo. 2003-124, at *5-*6 (and cases discussed thereat).

[5]Sec. 6201(d) provides:

In any court proceeding, if a taxpayer asserts a reasonable dispute

(continued...)

The record reflects that TCA requested information and documentation from petitioners regarding the status of the promissory notes it was holding as custodian of their IRA accounts. Although Mr. Blazer contacted TCA and insisted that the promissory notes had become worthless, neither he nor petitioners provided TCA with any documentation to substantiate that claim. TCA subsequently closed petitioners' accounts and distributed the promissory notes to them. The distributions are reflected in the Forms 1099-R that TCA issued to petitioners. See sec. 1.408-7, Income Tax Regs. (imposing reporting obligations on trustees of IRA accounts).

Petitioners argue that they proved through Dr. Berks' and Mr. Blazer's testimony that they did not receive a distribution of money or property from TCA during 2009 and that, therefore, the burden of proof shifted to respondent to demonstrate that petitioners received the income TCA reported. Respondent contends that Dr. Berks' and Mr. Blazer's testimony was self-serving and

[5](...continued)
with respect to any item of income reported on an information return filed with the Secretary * * * by a third party and the taxpayer has fully cooperated with the Secretary (including providing, within a reasonable period of time, access to and inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Secretary), the Secretary shall have the burden of producing reasonable and probative information concerning such deficiency in addition to such information return.

implausible. Given that petitioners failed to offer any objective evidence in support of their claim that the promissory notes in dispute had become worthless, respondent avers that they failed to meet their initial burden of production--a precondition for shifting the burden of proof or burden of production to respondent under sections 7491(a) and 6201(d), respectively. We agree with respondent.

Dr. Berks' testimony was self-serving and ineffective. At best, his testimony reveals that petitioners adopted an extremely passive approach in respect of their IRA investments and that they relied exclusively on Mr. Blazer to respond to TCA's requests for information. Dr. Berks knew little to nothing about the promissory notes or the partnerships that issued them. There is every indication that petitioners simply took Mr. Blazer at his word, and they apparently never saw the need to request any documentation that would substantiate that the partnerships had failed or that the promissory notes in their IRA accounts had become worthless. In the end, Dr. Berks' testimony is of no assistance to the Court in deciding the related questions of whether the promissory notes in petitioners' accounts had any value in 2009 and whether TCA erred in issuing the Forms 1099-R.

Mr. Blazer testified that all of the partnerships failed during the period 2001 to 2006 and that the promissory notes they issued to petitioners had become worthless. His testimony regarding the dates and circumstances related to the demise of the individual partnerships was vague and inconsistent. Remarkably, despite his central role in promoting the investments and his position as a general partner in the partnerships, he was unable to produce any documents or records to corroborate his own testimony. From the Court's perspective, Mr. Blazer's testimony that TCA never clearly explained to him what documentation it needed and, in any event, he did not retain or have access to any documentation that would show that the promissory notes had become worthless, was contrived, self-serving, and lacking in credibility. Even accepting Mr. Blazer's testimony that he did not retain any relevant partnership records, that circumstance begs the question why petitioners did not search public land records or similar sources in advance of trial in an attempt to unearth any documentation that might corroborate his testimony.

As we have stated many times, the Court is not obliged to accept a witness' self-serving testimony without objective, corroborating evidence. See Shea v. Commissioner, 112 T.C. 183, 189 (1999) (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)); see also Sparkman v. Commissioner, 509 F.3d 1149, 1156

(9th Cir. 2007) (confirming that the Court may disregard uncontradicted testimony where it finds the testimony vague, contrived, and lacking in credibility), aff'g T.C. Memo. 2005-136. Without more, we conclude that petitioners failed to meet their initial burden of producing credible evidence and/or presenting a reasonable dispute in respect of the Forms 1099-R TCA issued. As a result, respondent's deficiency determination is sustained.

II. Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). Negligence also includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Once the Commissioner meets his burden of

production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Higbee v. Commissioner, 116 T.C. 438, 447 (2001); see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.

Respondent discharged his burden of production under section 7491(c) by showing that petitioners failed to include the amounts in dispute in taxable income and failed to keep adequate records related to their IRA investments. See sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

A taxpayer may be able to demonstrate reasonable cause and good faith (and thereby escape the accuracy-related penalty of section 6662(a)) by showing reasonable reliance on professional advice. See sec. 1.6664-4(b)(1), Income Tax Regs. However, reliance on professional advice is not an absolute defense to the section 6662(a) penalty. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd,

904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). A taxpayer asserting reliance on professional advice must prove that: (1) the adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided the adviser necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). As a defense to the penalty, petitioners bear the burden of proving that they acted with reasonable cause and in good faith. See Higbee v. Commissioner, 116 T.C. at 446.

Although petitioners relied on a paid tax return preparer, there is no evidence in the record regarding the return preparer's experience or qualifications that would support the conclusion that petitioner's reliance on the preparer was reasonable. Dr. Berks admitted that he did not carefully review the return before filing it. Taxpayers have a duty to review their tax returns before signing and filing them, and the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), aff'd, 651 F.2d 1233 (6th Cir. 1981). In sum, on the record presented, petitioners failed to show that they acted with reasonable cause and in good faith within the meaning of section 6664(c)(1). Accordingly, respondent's determination that

petitioners are liable for an accuracy-related penalty under section 6662(a) is sustained.

Consistent with the preceding discussion,

<u>Decision will be entered</u>

<u>for respondent</u>.