

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2008

# Rivera v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2680

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Rivera v. Comm Social Security" (2008). *2008 Decisions.* Paper 1166.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1166

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

———————

NO. 07-2680

———————

LYDIA RIVERA,
                    Appellant

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

———————

On Appeal From the United States
District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 06-cv-01742)
District Judge:  Hon. William W. Caldwell

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 8, 2008

BEFORE:  BARRY and STAPLETON, *Circuit Judges*,
and RESTANI,* *Judge*

(Filed: May 21, 2008 )

———————

*Hon. Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by
designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Appellant Lydia Rivera appeals the District Court's decision affirming the Commissioner's denial of her request for benefits. For the reasons stated below, we will affirm.

## I.

Because we write only for the parties who are familiar with the factual context and procedural history of the case, we set forth only those facts necessary to our analysis.

On November 12, 2002, appellant Lydia Rivera filed for Disability Insurance Benefits and Supplemental Security Income payments, claiming that her numerous ailments left her unable to work. After a hearing, the ALJ found that Rivera suffered from the following severe impairments: osteoarthritis, cervical disc disease, chrondromalacia left knee, sleep apnea, carpal tunnel syndrome, fibromyalgia, depression, and anxiety. He also found that she suffered from a seizure disorder, though he did not consider it severe because the seizures occurred very infrequently and did not result in any continuing limitations or treatment.

Nevertheless, the ALJ found "not entirely credible" Rivera's "statements

concerning the intensity, duration, and limiting effects" of her ailments, in part because of a medical report inconsistent with Rivera's claims that she was unable to lift and carry objects – claims that were further contradicted by Rivera's own testimony that she often went grocery shopping on her own. (App. 27.) As further justification for his credibility determination, the ALJ pointed to an adverse inference he had drawn based on a pair of requests that Rivera had made to her treating physician, first demanding a new assessment of her condition – a request she explained was coming from her lawyer who had "sent her back with a new form because they were seeking permanent disability" – and then, after the doctor refused to cooperate, Rivera's demand that all his prior assessments of her condition be destroyed. (App. 28.) Finally, the ALJ suggested that Rivera's often inconsistent testimony was an additional reason to doubt the severity of her ailments. As a result, the ALJ concluded that her testimony on this topic was "not entirely credible." (App. 27.)

This adverse credibility finding left the ALJ unwilling to credit Rivera's claims that she was unable to lift and carry anything at all. Instead, he found, based in part on the report of an examining physician, that Rivera "has the residual functional capacity to lift 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours [and] sit for 6 hours." (App. 26.) The ALJ then relied on the testimony of the vocational expert to find that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" in spite of these limitations. (App. 29.) As a consequence, the

3

ALJ concluded that Rivera "has not been under a 'disability' . . . from November 6, 2002 through the date of this decision." (App. 30.)

Rivera's request for review was denied by the SSA's Appeals Council. She then sought review in the District Court, which referred the case to a magistrate judge. After reviewing the record, the magistrate judge concluded that the ALJ's determination was supported by substantial evidence, and the District Court adopted his report over Rivera's objection. This appeal followed.[1]

## II.

Rivera first argues that the ALJ should not have drawn an adverse inference based on her request for a new report from her treating physician, and her subsequent demand that the physician destroy all his previous reports on her condition. This argument is contrary to the well-settled proposition that a trier of fact may draw an adverse inference whenever a litigant intentionally destroys relevant evidence, which these reports undoubtedly were. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th. Cir. 2004); *accord Sparkman v. Comm'r*, 509 F.3d 1149, 1156 (9th Cir. 2007); *Underwriters Labs. Inc. v. NLRB*, 147 F.3d 1048, 1054 (9th Cir. 1998); *Simon* v. *Comm'r*, 830 F.2d 499, 506 (3d Cir. 1987); *Wichita Terminal Elevator Co. v. Comm'r*, 6 T.C. 1158, 1165 (1946); 9

---

[1] 28 U.S.C. § 1291 provides jurisdiction, and in evaluating these claims, this Court exercises plenary review over any and all legal conclusions and reviews any and all factual conclusions for substantial evidence. *E.g.*, *Allen v. Barnhart*, 417 F.3d 396, 398 (3d Cir. 2005); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003); *Seavey v. Barnhart*, 276 F.3d 1 (1st Cir. 2001).

4

WIGMORE, EVIDENCE § 2524 (3d ed. 1940).  Accordingly, because Rivera saw to it that relevant evidence in the form of the prior reports of her treating physician was destroyed, we conclude that it was entirely proper for the ALJ to draw such an inference.

Next, Rivera argues that the ALJ used the wrong standard to assess the severity of disability occasioned by her limited upper body mobility because he purportedly required her to show that her activities of daily living were "completely obliterated."  A review of the record reveals that ALJ never used "complete obliteration" as the standard, but rather used the phrase as a shorthand summary of Rivera's own description of the impact these ailments had on her daily activities.  (Rec. 18.)  The standard the ALJ did apply was whether "the claimant is able to do any . . . work considering her residual functional capacity, age, education, and work experience."  (App. 25.)  This is a correct statement of the law.  20 C.F.R. § 404.1520(a)(4).

Rivera further insists that the ALJ erred in assessing the severity of her seizure disorder at step two of his analysis.  While it is true, as Rivera stresses, that the applicable standard of severity at this stage does not impose a substantial burden, the issue posed is not whether the disability causes any impairment at all.  As the ALJ recognized, the severity inquiry at step two asks whether an impairment significantly limits a claimant's physical or mental ability to do "basic work activities," *i.e.*, physical "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," or mental activities such as

5

"understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). This is precisely the standard that the ALJ applied, and given the infrequency of Rivera's seizures and the absence of any lasting effects, there is substantial evidence to support his ultimate conclusions.

Finally, we have no doubt that there was substantial evidence supporting the ALJ's ultimate determination that Rivera was not entitled to benefits. Contrary to her assertions, the ALJ did not discount the hypothetical severity of any of Rivera's conditions. Instead, he went so far as to credit her diagnoses and acknowledge that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." (App. 27.) That said, for the reasons mentioned above – namely the medical report indicating that she had substantial residual capacity, her ability to carry items around the grocery store, her attempt to obtain a more favorable report from her treating physician, and her inconsistent testimony – the ALJ did not believe that Rivera was suffering from all these symptoms to the degree she claimed to be. In other words, while the ALJ had no problem believing that someone with fibromyalgia (or any other disorder Rivera suffers from) could feel as Rivera testified that she did, he did not think that Rivera herself actually felt that way, which is a conclusion that we believe is justified by the record. Further, his subsequent determinations that Rivera could lift, carry, and look

6

about, and his conclusion that there were jobs Rivera could perform were also supported by substantial evidence, namely the medical report and the testimony of the vocation expert appearing at the hearing. As a result, the ALJ's ultimate determination to deny Rivera benefits is supported by substantial evidence.

## III.

For the reasons set forth above, we will affirm the judgment of the District Court.