T.C. Memo. 2013-223

UNITED STATES TAX COURT

HARRY E. OBEDIN AND NEALE P. OBEDIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10707-10.                    Filed September 23, 2013.

<u>Arthur H. Boelter</u>, for petitioners.

<u>William D. Richard</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and penalties with

respect to petitioners' Federal income taxes as follows:

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2004 | $73,261 | $14,652.20 |
| 2005 | 38,401 | 7,680.20 |

After concessions, the issues for decision are (1) whether petitioners are entitled to a net operating loss (NOL) carryover in excess of the amount respondent conceded for 2004 and (2) whether petitioners had an adjusted basis in real estate, at the time of its disposition in 2004, greater than the amount respondent conceded. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Washington when they filed their petition.

Petitioners are involved in real estate businesses and described themselves as realtors during the years in issue. In 1962, petitioners organized two wholly owned S corporations through which to conduct real estate activities: Samaras Associates, Inc. (Samaras), which primarily deals with property rentals and management; and Silver Fox NW, Inc. (Silver Fox), which primarily deals with

[*3] property sales. Samaras and Silver Fox incurred losses before 2004, which passed through to petitioners.

In 2003, petitioners embarked on a real estate development project called "the Fremont Cottages" and set up on their accounting records a construction loan account identifying the project as "Obedin #70188". Petitioners hired CM Steel Construction, Inc. (CM Construction), to build the Fremont Cottages. Because CM Construction failed to perform its contractual duties, petitioners had to hire a law firm to represent them in litigation. Petitioners also had to retain and pay subcontractors to finish the project.

In 2003, petitioners made a payment to CM Restoration for $11,542.05, and in 2004, they made a payment to Aaron's Contracting for $4,000. At the end of 2004, petitioners sold the Fremont Cottages.

Harry E. Obedin (petitioner) prepared petitioners' jointly filed Forms 1040, U.S. Individual Income Tax Return, for 2004 and 2005. On their 2004 tax return, petitioners claimed an NOL carryover of $208,195 but did not attach any statement describing or computing the NOL deduction. Petitioners claimed a $1,249,511 adjusted basis and a $38,511 capital loss on the sale of the Fremont Cottages.

**[\*4]** The Internal Revenue Service (IRS) selected petitioners' 2004 and 2005 tax returns for examination. The agent assigned to petitioners' examination contemporaneously reviewed the tax returns of Samaras and Silver Fox, which petitioner also prepared. The examining agent requested that petitioners provide documents to substantiate the 2004 NOL carryover--specifically, all records for 2003, a tax year already examined by the IRS. Petitioners failed to provide any records substantiating the NOL carryover but instead provided copies of their tax returns from 1997 through 2003 (carry years).

During the examination, the IRS agent determined that, for 2004 and 2005, petitioners deducted their Samaras and Silver Fox employees' employment taxes twice--once as gross wages and, again, as taxes paid. In other instances, petitioners were unable to substantiate certain deductions claimed on their Schedules C, Profit or Loss From Business. Accordingly, the agent made adjustments to petitioners' 2004 and 2005 tax returns. Assuming that the same improper deductions occurred in earlier years, the agent made similar adjustments to petitioners' returns for the carry years, thereby reducing the amount of the carryover. In his workpapers, the agent explained his reasoning for making these additional adjustments as follows:

**[*5]** When the source of the * * * [Net Operating Loss Deduction] is the same business and other similarities exist, it is probable that, if the records were examined, the result would be similar to the current year adjustment. The examiner may propose a full or partial disallowance of the * * * [Net Operating Loss Deduction] based on this premise in the interests of reducing burden for both the Service and the taxpayer.

On the basis of this reasoning, the examining agent allowed petitioners a partial NOL carryover deduction of $90,685 for 2004.

With respect to their claimed basis in the Fremont Cottages, petitioners provided a box of receipts to the examining agent. The agent, however, stated that these records were impossible to use because they were so disorganized. The agent made an additional request for substantiating information, and petitioners provided some work product of their law firm that was created for the purpose of the CM Construction litigation. This work product included spreadsheets reflecting the costs involved in the Fremont Cottages project. These spreadsheets also showed costs from at least one other housing project that petitioners were involved with at that time.

To assist in computing the basis, the examining agent used one particular spreadsheet titled "Obedin Payments and Bankdraws to CM", numbered as pages 2 and 3, and dated April 25, 2005 (payments spreadsheet I). Page 2 of payments spreadsheet I reflects payments by petitioners to third-party subcontractors due to

[*6] CM Construction's contractual breach. Page 2 also shows a net amount of $207,977.99 as having been paid by petitioners towards construction of the Fremont Cottages, which the examining agent included in his basis computation. Page 3 of payments spreadsheet I reflects payments and bank draws by petitioners to "CM" and includes a bank draw disbursement of $22,896.05 dated October 6, 2003. The examining agent also used the net totals on page 3 in his basis computation.

The statutory notice determined that, inter alia, petitioners' basis in the Fremont Cottages and their claimed NOL carryover were both less than the amounts reported on their 2004 tax return.

OPINION

Normally our findings of fact would include only events occurring during the years in issue and not details of the audit. In this case, however, because substantiation of items by adequate records and the propriety of the examiner's determination are in dispute, we have described the process that led to the notice of deficiency. In other words, this case is an exception to the usual rule that we will not look "behind * * * [the] notice". See Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974).

**[*7]** Burden of Proof

Taxpayers are required to maintain adequate records that substantiate claimed loss deductions and generally bear the burden of proving that they are entitled to claimed losses.  Sec. 6001; Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Taxpayers claiming an NOL deduction bear the burden of substantiating the deduction by establishing both the existence of the NOL and the amount of any NOL that may be carried over to the subject years.  Rule 142(a)(1); United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955).  Nevertheless, if taxpayers produce credible evidence with respect to any factual issue relevant to ascertaining their Federal income tax liabilities, and certain other requirements are met, the burden of proof shifts from the taxpayers to the Commissioner as to that factual issue.  Sec. 7491(a)(1) and (2).

During pretrial preparation, the parties stipulated payments spreadsheet I, as well as another spreadsheet also titled "Obedin Payments and Bankdraws to CM", numbered as page 2, dated as "Revised May 20, 2005", and showing a net amount of $165,816.92 (payments spreadsheet II).  Payments spreadsheet II identifies check No. 1111 as a payment of $4,000 made to Aaron's Contracting on December 15, 2004.  The parties agreed that payments spreadsheet II reflects payments to vendors and subcontractors that were not attributable to CM

[*8] Construction and were therefore excluded for litigation purposes.  The parties also stipulated an exhibit, a cashier's check for $11,542.05 dated October 6, 2003, payable to CM Restoration and showing the remitter to be "Obedin #70188" (CM Restoration payment).

At trial and on brief, petitioners claimed to have boxes of documents substantiating the NOL carryover and the basis in the Fremont Cottages, but they failed to submit those records.  Even if petitioners had just provided the tax returns for the carry years--as they had done for respondent--those returns would have been insufficient to prove that any NOL (assuming such) was not completely absorbed in years before 2004.  See, e.g., Stutsman v. Commissioner, T.C. Memo. 1961-109.  Petitioners also failed to propose findings of fact that compute the NOL and, instead, include only respondent's computation.  Additionally, petitioners failed to attach the required statement detailing the NOL to their 2004 tax return.

Petitioners argue that, through the stipulated joint exhibits and petitioner's testimony, they have met their initial burden of production as to the propriety of their claimed NOL deduction; thus it is respondent, not petitioners, who should bear the burden of proof as to the 2004 NOL carryover deduction.  Petitioners

**[*9]** rationalize that there is no reason not to accept petitioner's testimony because it was allegedly unopposed and not impeached.

Petitioners' argument is unsupported by the record. The only stipulated joint exhibits that speak to the NOL deduction are petitioners' 2004 tax return, the notice of deficiency, and the 2004 NOL workpapers of the examining agent. Of those exhibits, only the 2004 tax return indicates petitioners' position, at least as to the amount of the NOL carryover. But the return is merely a statement of petitioners' claim to the NOL and does not establish the facts contained therein. See Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

Petitioner's testimony is equally unreliable as he makes only vague references to the 2004 NOL deduction. See Sparkman v. Commissioner, 509 F.3d 1149, 1156 (9th Cir. 2007) (confirming that, in the face of vague, contrived, and noncredible testimony, the Tax Court may disregard uncontradicted testimony by a taxpayer where it finds that testimony lacking in credibility), aff'g T.C. Memo. 2005-136. He has not explained how the double deductions occurred for 2004 and 2005 or given us any reason to reject the examiner's assumption that the same errors occurred in the carry years. The absence of corroboration of his testimony by organized and reliable records leads us to conclude that petitioners have not carried their burden of proof as to the disputed deductions. See Shea v.

[*10] Commissioner, 112 T.C. 183, 188 (1999).  Petitioners have not satisfied the conditions for shifting that burden to respondent under section 7491(a)(1).

Alternatively, petitioners argue that the burden of proof should shift to respondent because respondent's computation of the NOL carryover is arbitrary and lacking in foundation and that such a determination cannot be presumed correct.  Generally, the Commissioner's determination in a notice of deficiency is presumed correct.  Helvering v. Taylor, 293 U.S. 507, 515-516 (1935).  If a taxpayer wishes to overcome this presumption of correctness, he bears the burden of proving that the Commissioner's determination was arbitrary.  Id.; Clapp v. Commissioner, 875 F.2d 1396, 1403 (9th Cir. 1989).  However, "when a taxpayer refuses to substantiate his claimed deductions, the Commissioner is not arbitrary or unreasonable in determining that the deductions should be denied."  Roberts v. Commissioner, 62 T.C. at 837.  Moreover, if the Commissioner does arbitrarily disallow deductions, the burden of proof as to substantiation of the deductions still rests with the taxpayer who claimed them.  See Westby v. Commissioner, T.C. Memo. 2004-179, slip op. at 32; see also Time Ins. Co. v. Commissioner, 86 T.C. 298, 313-314 (1986).

Petitioners submitted no evidence that respondent reached the determination arbitrarily.  To the contrary, respondent's examining agent took reasoned steps in

[*11] determining an NOL carryover where no substantiating documents had been provided. Petitioners are required to substantiate the NOL carryover and to carry their burden of proof.

NOL Deduction

Section 172 permits a deduction in a taxable year for the full amount of allowable NOL carrybacks from subsequent years and carryovers from previous years, as long as taxable income for the current year is not less than zero. Sec. 172(a), (b)(2). As with all deductions, taxpayers are required to maintain adequate records substantiating a claimed NOL deduction. Sec. 6001. See generally, Scharringhausen v. Commissioner, T.C. Memo. 2012-350, at *31-*32. As part of claiming the deduction, taxpayers must file with their returns a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction. Sec. 1.172-1(c), Income Tax Regs.

Petitioners focus on respondent's computation of the NOL, even though they are the ones who claimed, and must prove, the loss. Yet petitioners have produced only petitioner's unpersuasive testimony to substantiate their entitlement to an NOL carryover in 2004. His testimony does not detail when the NOL was

[*12] allegedly incurred, the amount allegedly incurred, or the calculation of the amount allegedly available to be carried forward to 2004.

Respondent allowed petitioners the benefit of an NOL carryover of $90,685 for 2004. Petitioners have not carried their burden of proof and, accordingly, are not entitled to an NOL carryover beyond that allowed by respondent.

Adjusted Basis in the Fremont Cottages

Unless permitted otherwise, a taxpayer must recognize gain from the sale or exchange of property. Sec. 1001(c); see also sec. 1.61-6(a), Income Tax Regs. (providing, generally, that gain realized on the sale of property is included in gross income). Section 1001(a) defines gain from the sale or other disposition of property as the excess of the amount realized on the sale of property over the adjusted basis of the property sold or exchanged. Section 1011(a) provides that a taxpayer's adjusted basis for determining the gain from the sale or other disposition of property shall be its cost, adjusted to the extent permitted by section 1016. See sec. 1016(a)(1); sec. 1.1016-2(a), Income Tax Regs. (providing that the cost basis should be increased by additional costs properly chargeable to capital account, including the cost of improvements and betterments made to the property). The taxpayer has the burden of proving the basis of property for purposes of determining whether a gain occurred and, if so, in what amount. Rule

**[\*13]** 142(a); O'Neill v. Commissioner, 271 F.2d 44, 50 (9th Cir. 1959), aff'g T.C. Memo. 1957-193.

The parties agree to the computation of the adjusted basis of the Fremont Cottages, with the exception of two items. Petitioners maintain that they are entitled to include in their basis the CM Restoration payment for $11,542.05 and a payment to Aaron's Contracting for $4,000. Respondent concedes that these payments were made but contends that petitioners have failed to show either that these payments were not already included in the examining agent's computation of basis or that they were properly chargeable to the capital account of the Fremont Cottages.

Petitioners point out that the CM Restoration payment, dated October 6, 2003, bears the account number of the Fremont Cottages project, "Obedin #70188". That identification, however, does not explain whether the examining agent's computation already included this payment. Payments spreadsheet I lists an entry, also dated October 6, 2003, that reflects a bank draw disbursement to "CM" of $22,896.05. Petitioners did not explain why the $11,542.05 amount to CM Restoration was not a portion of the $22,896.05 amount to CM. Nor did petitioners testify as to whether CM Restoration was a part of CM Construction or,

**[\*14]** conversely, that the two companies merely shared the same initials and same payment date.

While it appears that respondent's determination of basis does not include the payment to Aaron's Contracting, we are unable to tell if petitioners made that payment in connection with the Fremont Cottages project. The record has established that petitioners were involved in at least one other project at the time of the Fremont Cottages project. And payments spreadsheet II, while suggesting an omission of the payment from basis, represents only that the listed payment was not attributable to CM Construction--not necessarily that the payment was attributable to the Fremont Cottages project.

There is simply not enough substantiating evidence to ascertain that these two payments should be added to the basis of the Fremont Cottages. Neither party provides a clear itemization as to what payments were actually included in the last computation of basis. Additionally, payments spreadsheets I and II appear to have inconsistences, such as the same check number listed on both spreadsheets yet reflecting different payees and different amounts. The evidence covering this issue is not sufficient to satisfy petitioners' burden of proof. We therefore sustain respondent's determination on this issue.

**[\*15]**  In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.