NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JIMMY ESEBAG, | No. 23-55440 |
| Plaintiff-counter-defendant-Appellant, | D.C. No. 2:18-cv-08446-JAK-RAO |
| v. | |
| JUSTIN WHALEY, an individual; et al., | MEMORANDUM* |
| Defendants-counter-claimants-Appellees, | |
| v. | |
| UNITED LICENSING GROUP, INC., a California corporation, | |
| Counter-defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted April 4, 2024
Pasadena, California

Before: R. NELSON, VANDYKE, and SANCHEZ, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Jimmy Esebag, Plaintiff-Appellant and Counter-Defendant, filed a lawsuit against members of the Gyde Group for breach of contract. The Gyde Group members agreed to pay Esebag $25 million in exchange for a 25% interest in United Licensing Group ("ULG"), which owns the rights to "Dr. Boost." "Dr. Boost" was a line of nutritional supplements, and the main product was a two-ounce, liquid testosterone boosting supplement with an active ingredient called "Testophor."

The Gyde Group members counterclaimed against Esebag and sued ULG for (1) violations of §§ 25401, 25110, and 25503 of the California Corporations Code, (2) violations of § 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934 (the "Securities Act"), (3) common-law fraud, (4) unjust enrichment, (5) unfair competition, and (6) violations of §§ 5 and 12 of the Securities Act

At trial, a jury found against Esebag on his contract claim. The jury also found for the Gyde Group members and against Esebag and ULG on the counterclaims. The district court entered judgment for the Gyde Group members on all claims, and it rescinded the parties' contract. It awarded the Gyde Group members $3.5 million in compensatory damages, $1.5 million in punitive damages, and $1,313,219.18 in prejudgment interest. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

---

[1] Esebag and ULG waived their challenge to the punitive damages award by failing to raise arguments about the sufficiency of the evidence in a Rule 50 motion below. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1041 (9th Cir. 2003).

1. Esebag and ULG argue that they cannot be liable for the sale of unregistered securities because substantial evidence does not support the jury's findings. Section 5 of the Securities Act forbids the offer or sale of unregistered securities in interstate commerce, 15 U.S.C. § 77e, but these requirements do not apply to "transactions by an issuer not involving any public offering," *id.* § 77d(a)(2). The Ninth Circuit test to assess offering status "considers: (1) the number of offerees, (2) the sophistication of the offerees, (3) the size and the manner of the offering, and (4) the relationship of the offerees to the issuer." *W. Fed. Corp. v. Erickson*, 739 F.2d 1439, 1442 (9th Cir. 1984) (citing *SEC v. Murphy*, 626 F.2d 633, 644–45 (9th Cir. 1980)).

The evidence weighs against Esebag and ULG on three factors. M. Sean Hatch and Michael Bahn, two members, did not have the requisite income and net-worth to meet the Securities Act's sophistication benchmark. *See* 15 U.S.C. § 77b(15)(ii); 17 C.F.R. § 230.501(a). The size of the offering—$25 million—is also much larger than the offering at issue in *Murphy*. *Murphy*, 626 F.2d at 646–47 (holding that $7.5 million was a sizeable offering). And the parties did not have a close relationship with the Gyde Group members. *See id*. at 647. This is sufficient to support the jury's conclusion. *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

Esebag and ULG also assert that Hatch and Bahn are estopped from denying their accreditation status because they signed an agreement which stated that "[e]ach

3

Buyer represents that (i) it is an 'accredited investor' under applicable law . . . ." But estoppel applies only if the party making the statement intended for the statement to be acted on. *Cedar Creek Oil & Gas Co. v. Fid. Gas Co.*, 249 F.2d 277, 281 (9th Cir. 1957). Both Hatch and Bahn testified that they did not realize that the accredited investor provision was in the agreement. The jury was free to credit this testimony.

An "insignificant deviations" exception may apply to failures to comply with registration requirements. *See* 17 C.F.R. § 230.508(a)(3). But Esebag or ULG needed to make a "good faith and reasonable attempt . . . to comply with all applicable terms," *id.*, including the requirement that "[t]he issuer . . . take reasonable steps to verify that purchasers of securities sold in any offering . . . are accredited investors." *Id.* § 230.506(c)(2)(ii). Esebag and ULG point only to the representations in the agreement to assert that they made a good faith attempt to comply, but the jury was permitted to conclude that this was insufficient. *See id.*

2. Under California law, it is "unlawful for any person to offer or sell a security . . . by means of any written or oral communication that includes an untrue statement of material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401. The Gyde Group members raised several alleged misrepresentations that they claim to have relied on in

4

entering the agreement, including that "Testophor," the active ingredient of "Dr. Boost," was co-developed by a world class doctor.

It is undisputed that in a February 2017 presentation to the Gyde Group, Esebag touted that Dr. Boost's active ingredient—"Testophor"—was "[c]o-developed by [a] world class Anti-Aging Specialist and Doctor" and included an exclusive blend of DHEA, epimedium, and deer antler powder. It is also undisputed that when the agreement was signed, the doctor who originally formulated Dr. Boost was no longer involved in product development, and Esebag had realized he could not use "Testophor" in Dr. Boost. Each Gyde Group member testified that he would not have invested in ULG had he known the truth about at least one of these two uncorrected misrepresentations. The jury was free to credit this testimony, so substantial evidence supports the jury's findings that at least one of the misrepresentations was material.

Under California law, "[t]he elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 65 P.3d 1255, 1258 (Cal. 2003). Esebag and ULG argue that there is no substantial evidence that Esebag had an intent to defraud or induce reliance. But a reasonable jury could have inferred that Esebag had the intent to induce reliance

5

under California law based on his misrepresentations. *See, e.g.*, *Nathanson v. Murphy*, 282 P.2d 174, 178 (Cal. Ct. App. 1955).

Under federal securities law, a "violation of Section 10(b) and Rule 10b–5 is established if the defendant (1) made a material misrepresentation or omission (2) in connection with the purchase of a sale or security (3) with scienter (4) in interstate commerce." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010). If a reasonable jury could infer that Esebag had the intent to induce reliance under California law, then a reasonable jury could conclude that Esebag's conduct was reckless under federal securities law. *See Hollinger v. Titan Cap. Corp.,* 914 F.2d 1564, 1568–69 (9th Cir. 1990) (en banc).

3. The parties also signed an amendment to the original agreement. The Gyde Group argues that in exchange for the advance payment of $1 million, Esebag agreed to suspend future payments by the Gyde Group and to renegotiate the payment schedule based on sales of Dr. Boost. The Gyde Group members paid Esebag the $1 million advance, but they did not make remaining payments, asserting that Esebag never renegotiated the payment schedule which was a condition precedent to the members' future performance.

Because substantial evidence supports the jury's verdicts on each of the counterclaims, we can affirm all aspects of the district court's judgment regardless of our view of the breach-of-contract claim. The district court rescinded the contract

6

based on violations of securities laws, and damages were awarded based on the securities law and fraud counterclaims. Thus, the judgment does not rely on Esebag and ULG's breach-of-contract claim.

4. Finally, Esebag and ULG argue that the district court committed reversible error by asking their counsel to refrain from reading documents that were admitted in evidence to witnesses rather than asking them questions. But "Federal Rule of Evidence 403 allows even relevant evidence to be excluded if its admission would result in 'needless presentation of cumulative evidence.'" *Sparkman v. C.I.R.*, 509 F.3d 1149, 1157 (9th Cir. 2007). If excluding evidence that would result in the needless presentation of cumulative evidence is permissible, then the district court's request that counsel refrain from reading evidence that *was* admitted because it would have been a presentation of cumulative evidence was permissible. Further, the exclusion of cumulative evidence is not likely to cause substantial prejudice. *See Wong v. Belmontes*, 558 U.S. 15, 22–23 (2009) (per curiam).

**AFFIRMED.**