T.C. Memo. 2008-253

UNITED STATES TAX COURT

WILLIAM C. WYATT AND LISA M. WYATT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24246-04.                    Filed November 10, 2008.

<u>Robert J. Stientjes</u>, for petitioners.

<u>Michael W. Bitner</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined the following deficiencies, addition to tax, and penalty with respect to petitioners' Federal income taxes:

| | | Addition to Tax and Penalty | |
| | | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6662 |
| 1998 | $3,347 | -- | -- |
| 1999 | 3,341 | -- | -- |
| 2000 | 42,166 | $6,325 | $8,433 |
| 2001 | 165 | -- | -- |

After concessions by petitioners, these issues remain for
decision: (1) Whether petitioners are entitled to a theft loss
deduction for 2001; (2) whether petitioners are liable for the
section 6651(a)(1)[1] addition to tax for 2000; and (3) whether
petitioners are liable for the section 6662(a) accuracy-related
penalty for 2000.

FINDINGS OF FACT

The parties have stipulated some facts, which are so found.
When they petitioned the Court, petitioners resided in Maryland.

From 1997 through early 2001, Anderson Ark & Associates
(Anderson Ark) marketed and sold investment programs. Anderson
Ark, with over 1,500 clients, was based in Costa Rica, had
administrative offices in Hoodsport, Washington, and maintained a
presence in four other countries.

In April 2000 petitioners learned about Anderson Ark from a
friend who claimed to have made money from Anderson Ark
investments. After attending a promotional meeting in Hickory,

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure. All dollar amounts are rounded to the nearest dollar.

North Carolina, and learning about purported financial planning opportunities and reputed tax advantages, William C. Wyatt (petitioner husband) decided to invest with Anderson Ark.

One program sold by Anderson Ark was called the Look Back Program. This program offered investors the opportunity to participate in purported joint ventures with Anderson Ark entities, including Macro Media Advertising, L.L.C. (Macro Media), which was purportedly engaged in the advertising of books, electronic media, and audiotapes. One of the publications that Macro Media proposed to distribute was a book entitled "21st Century Tax Strategies and Structures", by Tara LaGrand and Gary Kuzel. The business ventures were purportedly to be financed in large part by loans from La Maquina Blanca, S.A., a Costa Rican entity that Anderson Ark controlled. As it turned out, the loans were nonexistent.

Another Anderson Ark investment program, the Loan Four Program, also known as the Factoring Program, was marketed as a short-term investment that would yield large returns. This program was later revealed to be a pyramid scheme.

Petitioners allege that between April and August 2000 they made six payments to Anderson Ark totaling $161,270 for investments in the Look Back Program and the Loan Four Program. It was apparently not until December 2000, however, that petitioner husband effected his investment in the Look Back

Program by forming a partnership called Wilwyatt Joint Venture (Wilwyatt) with Macro Media. The purported partnership agreement indicates that petitioner husband received a 95-percent interest in Wilwyatt in return for a $42,700 payment.[2]

As part of petitioner husband's participation in the Look Back Program, the Loan Four Program, or both, Anderson Ark formed an entity in Costa Rica called Acuerta.com, S.A., with petitioner husband as its owner. Acuerta.com, S.A. or some other Anderson Ark affiliate provided petitioners with one or more VISA debit cards with which they could withdraw funds at automatic teller machines in the United States. Between May 2000 and March 2001 petitioners withdrew at least $58,709 from their investments with Anderson Ark.

On February 26, 2001, the U.S. District Court for the District of Massachusetts issued arrest warrants with respect to several principals of Anderson Ark (the Anderson Ark defendants). On February 28, 2001, U.S. law enforcement officials and Costa Rican authorities raided Anderson Ark's offices in Santa Ana, Costa Rica. On that same day, U.S. law enforcement officials raided 14 Anderson Ark domestic locations.

---

[2] The copy of the purported partnership agreement in the record is signed only by petitioner husband. Petitioners characterize the $42,700 payment as a "loan fee" for a loan to finance their initial investment in Wilwyatt. Included in the record is a copy of an undated promissory note, signed only by petitioner husband, indicating a $250,000 10-year loan to Wilwyatt from La Maquina Blanca, S.A., to be funded upon payment of $42,700 in fees.

Following their indictment on May 3, 2001, in 2002 the Anderson Ark defendants were convicted in the U.S. District Court for the Eastern District of California on charges of money laundering and/or conspiracy to commit money laundering. See United States v. Anderson, 371 F.3d 606, 610 (9th Cir. 2004). Also in 2002 the same Anderson Ark defendants and two other Anderson Ark principals (hereafter collectively referred to as the Anderson Ark defendants) were indicted in the U.S. District Court for the Western District of Washington.

In 2004 the Anderson Ark defendants were convicted in the Washington District Court on charges of conspiracy to defraud the United States, mail fraud, wire fraud, money laundering, and aiding and assisting the filing of false tax returns with respect to their participation in Anderson Ark, as well as 19 counts of wire and mail fraud for defrauding Anderson Ark clients of over $7 million in fees for the nonexistent loans associated with the Look Back Program. In addition, one of the principals, Keith Anderson, was convicted of defrauding Anderson Ark clients of $21 million with respect to their investments in the Loan Four Program.

Petitioners' 2000 Federal income tax return was due, after an extension, on August 15, 2001. Petitioners did not file their 2000 return until October 18, 2001. The return was prepared by Tara LaGrand (LaGrand), a certified public accountant who was

affiliated with Anderson Ark and coauthored the aforementioned 21st Century Tax Strategies and Structures. LaGrand also prepared petitioners' 2001 Federal income tax return, which she signed on May 10, 2002. LaGrand was later incarcerated for her involvement in Anderson Ark.

On their 2000 return petitioners claimed a $275,730 loss from Wilwyatt and resulting net operating loss carrybacks to 1998 and 1999 and a carryforward to 2001. Petitioners claimed no theft loss from their Anderson Ark investments with respect to any of these years. In the notice of deficiency, respondent disallowed the purported Wilwyatt loss, carrybacks, and carryforwards, primarily on the grounds that petitioners had failed to establish that they had basis in Wilwyatt.

The petition assigns error to this determination. In an amendment to their petition, petitioners claim a $140,000 theft loss deduction for 2001 with respect to their Anderson Ark investments.[3]

## OPINION

Petitioners concede that respondent properly disallowed the $275,730 passthrough loss from Wilwyatt and the related carrybacks and carryforwards. The primary issue for decision is

---

[3] On brief petitioners claim that they are entitled to theft loss deductions totaling $102,561. We deem petitioners to have conceded that they are entitled to no greater theft loss deduction.

whether petitioners are entitled to a theft loss deduction, as claimed in their amendment to petition.

I.   Evidentiary Issue

Before trial the parties stipulated certain facts and exhibits, including petitioners' Exhibits 17-P and 22-P.  Exhibit 17-P is a U.S. Department of Justice press release dated December 27, 2004.  This press release discusses the convictions of six individuals associated with Anderson Ark.  In the stipulation of facts, petitioners reserved objections to this exhibit on the ground that "it constitutes hearsay, except for select portions of which petitioner asserts are admissible as an exception to the hearsay rules."[4]  At trial petitioners' counsel did not seek to withdraw this exhibit but requested that only certain sentences and sentence fragments should come into evidence as admissions of a party opponent and that everything else should be stricken from the record.

Exhibit 22-P is a grand jury indictment (case No. 02-CR-00423) in the U.S. District Court for the Western District of Washington against specified individuals associated with Anderson Ark.  It contains paragraphs 1 through 469.  In the stipulation of facts, petitioner reserved a hearsay objection to paragraphs 28 through 376 on the grounds that those paragraphs, and only

---

[4] In the stipulations, respondent also reserved an objection to Exhibit 17-P on the grounds of hearsay but withdrew the objection at trial.

those paragraphs, did not constitute admissions of a party opponent.

The Court overruled petitioners' objections to Exhibits 17-P and 22-P. On brief petitioners renew their objections to these exhibits. The exhibit numbers indicate that these stipulated exhibits were offered by petitioners. See Rule 91(b). Petitioners have offered no explanation as to why they have chosen to offer as their own exhibits documents in a form they find objectionable. Cf. Ohler v. United States, 529 U.S. 753, 755 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."). In any event, the Court has not relied upon, for their truth, the portions of the exhibits to which petitioners object.

II. Burden of Proof

In general, deductions are a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to maintain records sufficient to enable the Commissioner to determine their correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438 (2001); sec. 1.6001-1(a), Income Tax Regs. The records must substantiate both the amount and purpose of the claimed deductions. Higbee v. Commissioner, supra at 440. Petitioners have the burden of proving they are entitled to the claimed deduction. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

Petitioners argue that pursuant to section 7491(a) the burden of proof should shift to respondent.  Section 7491(a)(1) provides that if "in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer * * * the Secretary shall have the burden of proof with respect to such issue."  This burden-shifting provision is inapplicable unless the taxpayer has, among other things, complied with all requirements under the Code to substantiate any item and unless "the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2)(A) and (B).  The taxpayer has the burden of establishing that all the requirements of section 7491(a)(2) have been met.  Higbee v. Commissioner, supra at 441.

Petitioners did not cooperate with respondent's reasonable requests for witnesses, information, documents, meetings, and interviews as required by section 7491(a).  Because of petitioners' failure to cooperate in pretrial proceedings, the Court granted respondent's Rule 71(c) motion to compel responses to respondent's interrogatories and his Rule 91(f) motion to compel stipulation.  Moreover, petitioners have failed to produce credible evidence in that, as discussed with more particularity infra, they have failed to produce evidence of such quality that,

after critical analysis, we would find it sufficient upon which to base a decision on the issue if no contrary evidence were submitted.  See Higbee v. Commissioner, supra at 442 (quoting H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995).

Finally, petitioners were required to keep records sufficient to establish whether they are liable for tax.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Petitioners have produced only fragmentary records as evidence of their investments in Anderson Ark-related programs.  Petitioners have not alleged or shown that they have maintained all records required under section 6001 and the regulations thereunder. Petitioners have not shown that section 7491(a) applies to shift the burden of proof to respondent, and the burden of proof remains on petitioners.

III.  Theft Loss Deduction

Section 165 generally allows a deduction for uncompensated losses resulting from theft for the year in which the taxpayer discovers the loss.  Sec. 165(a), (c), (e).

Petitioners claim to have made the following payments to Anderson Ark for investment purposes:

| Date | Amount |
| --- | --- |
| 4/19/00 | $120 |
| 4/19/00 | 5,150 |
| 7/25/00 | 100,000 |
| 8/01/00 | 40,000 |
| 8/01/00 | 11,000 |
| 8/30/00 | 5,000 |
| Total | 161,270 |

Petitioners concede that they withdrew $58,709 from Anderson Ark between May 2000 and March 2001. They claim that the amount of the purported theft consists of their $161,270 of alleged total investments less their $58,709 of withdrawals, or $102,561.

Respondent contends that petitioners' total investments in Anderson Ark were less than the $58,709 of their withdrawals, which respondent suggests were likely to have included earnings on their investments. We need not resolve that issue, for even if we were to assume for purposes of argument that petitioners' investments in Anderson Ark equaled at least the $58,709 that they withdrew, petitioners have failed to substantiate any additional amount of investment and consequently have failed to show that they suffered a loss.

In particular, other than petitioner husband's vague and self-serving testimony there is no evidence in the record of the $11,000 and $5,000 investments that allegedly were made on August 1 and 30, 2000, respectively. This Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony. Shea v. Commissioner, 112 T.C. 183, 189 (1999);

see also <u>Ganas v. Commissioner</u>, T.C. Memo. 1990-143, affd. without published opinion 943 F.2d 1317 (11th Cir. 1991).

Similarly, petitioners have failed to substantiate the $100,000 investment that they claim to have made on July 25, 2000. Attempting to substantiate this investment, petitioners rely primarily on a photocopy of a facsimile document captioned "WIRE DISBURSEMENT INQUIRY", which shows a $100,000 early distribution from petitioner husband's IRA to "Key Services Corporation" in Albany, New York, for the benefit of petitioner husband. The parties have stipulated that these funds were deposited into an account held by Denarius Financial Group at KeyBank. Petitioner husband testified that this was "the wire transfer, one of the wire transfers, that I used to move my money to Anderson's Ark". Petitioner husband also testified, however, that he did not know how the funds went from Denarius Financial Group to Anderson Ark in Costa Rica. The record does not establish, and petitioners have not explained, the relationship, if any, between Denarius Financial Group and Anderson Ark. Petitioners have not shown by competent evidence that the $100,000 was ever invested in Anderson Ark.

Because petitioners have failed to substantiate $116,000 of their alleged $161,270 investment in Anderson Ark, we need not consider the evidence supporting the remaining $45,270 of alleged investment, inasmuch as this amount is less than the $58,709 that

petitioners admit having withdrawn from Anderson Ark. Moreover, because of the fragmentary nature of petitioners' records, we have no great confidence that the amount that petitioners withdrew was not greater than they have admitted. Because petitioners have failed to show that they invested more with Anderson Ark than they withdrew, they have failed to establish the existence or amount of any loss. Nor have they presented sufficient evidence to establish a rational basis for estimating any such loss. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Hossbach v. Commissioner, T.C. Memo. 1981-291.

Moreover, the record does not support a finding that, if a theft loss did occur, petitioners sustained it in 2001. A theft loss is treated as sustained during the taxable year in which the taxpayer discovers the loss. Sec. 165(e). The regulations provide that "if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery", then "no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received." Sec. 1.165-1(d)(3), Income Tax Regs.

Whether a reasonable prospect of recovery exists with respect to loss reimbursement claim is a question of fact to

be determined upon an examination of all facts and circumstances. Sec. 1.165-1(d)(2)(i), Income Tax Regs. "A reasonable prospect of recovery exists when the taxpayer has bona fide claims for recoupment from third parties or otherwise, and when there is a substantial possibility that such claims will be decided in his favor." Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975). The loss deduction need not be postponed, however, if the potential for success of a claim is remote or nebulous. Id. The determination as to whether there is a reasonable prospect of recovery is based primarily on objective factors; the taxpayer's subjective belief may also be considered, but it is not the sole or controlling criterion. Id.; see Jeppsen v. Commissioner, 128 F.3d 1410, 1418 (10th Cir. 1997), affg. T.C. Memo. 1995-342.

Petitioners have failed to establish that they had no reasonable prospect of recovery at the end of 2001. Petitioner husband testified that in weekly telephone calls with Anderson Ark representatives before May 1, 2001, he was told that Anderson Ark would be "vindicated because everything they did was legal." He testified that he later participated in several conference calls with other investors and attorneys in Costa Rica who were trying to form a group of former Anderson Ark investors to fund a lawsuit. He testified that he declined to retain an attorney because "I'd thrown enough money down there and I didn't

think that it would be profitable to go any further with it" and "because nobody really knew where the money was".

Other than this uncorroborated testimony, there is no evidence that petitioners had no reasonable prospect for recovery in 2001 of amounts allegedly invested with Anderson Ark and not already withdrawn. Other than allegedly participating in some conference calls, petitioners apparently made no efforts to recover the sizeable amounts they now claim to have been stolen. Tellingly, petitioners retained LaGrand, their Anderson Ark-affiliated "planner" who coauthored the book that was implicated in petitioners' alleged fleecing by Anderson Ark, to prepare not only their 2000 return (claiming significant pass-through losses from Wilwyatt) but also their 2001 Federal income tax return, which was prepared in May 2002; i.e. the year after petitioners allegedly discovered the theft. It seems to us implausible that in 2001 petitioners would have simply abandoned any efforts to recover over $100,000 in funds allegedly stolen by Anderson Ark and yet would have continued as late as May 2002 to rely upon LaGrand to prepare their tax returns.[5]

---

[5] On reply brief petitioners attempt to minimize the significance of their continued involvement with Tara LaGrand, stating: "LaGrand was not responsible for the theft of the money. Petitioners do not blame LaGrand for the theft of the money and simply chose to continue using her Certified Public Accounting services after the discovery of the theft by the principals of Anderson's Ark." Inconsistently, in their pretrial memorandum petitioners state that after LaGrand prepared their 2000 return they "learned that the accountant was in league with

(continued...)

In the first half of 2001 several Anderson Ark defendants had been arrested and indicted. Petitioner husband was apparently aware of these legal difficulties. Whether he chose to believe, as he had been told, that Anderson Ark ultimately would be vindicated, or whether he was indifferent to Anderson Ark's legal problems because he had already withdrawn all or most of the funds he had invested with Anderson Ark, or whether he made a calculated decision to continue relying on LaGrand's services in hopes of realizing the bogus tax losses from his Anderson Ark investments, the result is the same: Petitioners have failed to establish that it was reasonably certain at the end of 2001 that they would not recover their alleged Anderson Ark losses.

IV. Addition to Tax and Penalty

Section 6651(a)(1) imposes an addition to tax for failure to file a Federal income tax return by its due date, determined with regard to any extension of time for filing previously granted. The addition equals 5 percent for each month that the return is late, not to exceed 25 percent. Id. Unless otherwise provided, the Commissioner has the burden of production with respect to this addition to tax. Sec. 7491(c).

Petitioners' 2000 Federal income tax return was due on August 15, 2001, under an extension of time to file their return.

---

[5](...continued)
the investment managers who defrauded Petitioners."

The parties have stipulated that the IRS received petitioners' 2000 tax return on October 18, 2001.  Respondent has met his burden of production pursuant to section 7491(c).

The addition to tax under section 6651(a)(1) shall not apply if it is shown that the failure to timely file is due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1).  A delay is due to reasonable cause if "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioners bear the burden of proving that their failure to timely file was due to reasonable cause and not to willful neglect.  See Higbee v. Commissioner, 116 T.C. at 447.

Petitioners argue that they failed to file their 2000 return on time because LaGrand "falsely informed petitioners that she had filed a second request for extension of time to file their 2000 federal income tax return and that the due date would be validly extended from August 15, 2001 until October 15, 2001." A taxpayer has, however, a personal and nondelegable duty to file a timely return; reliance on a bookkeeper or accountant does not provide reasonable cause for an untimely filing.  United States v. Boyle, 469 U.S. 241, 249 (1985); Sparkman v. Commissioner, T.C. Memo. 2005-136, affd. 509 F.3d 1149 (9th Cir. 2007). Petitioners have not established reasonable cause for their late

filing.  Petitioners are liable for the section 6651(a)(1) addition to tax.

Pursuant to section 6662(a) and (b)(1) and (2) a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax that is attributable to (1) negligence or disregard of rules or regulations, or (2) any substantial understatement of tax.  A substantial understatement of tax is defined as an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000.  See sec. 6662(d)(1)(A).

On their 2000 income tax return petitioners claimed a $275,730 loss which they now concede to have been erroneous, resulting in a $42,166 deficiency.  Respondent has met his burden of production with respect to the accuracy-related penalty.

No penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was reasonable cause and that the taxpayer acted in good faith.  Sec. 6664(c).  Whether a taxpayer acted in good faith depends upon the facts and circumstances of each case.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Reliance in good faith on the advice of a qualified adviser may constitute reasonable cause. Id.  Reliance may be unreasonable if the taxpayer knows or should have known that the adviser has an inherent conflict of interest. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99

(2000), affd. 299 F.3d 221 (3d Cir. 2002); <u>Rogers v. Commissioner</u>, T.C. Memo. 2005-248.

Petitioners did not obtain independent advice or look beyond their Anderson Ark-affiliated accountant, LaGrand, in claiming a $275,730 tax loss from Wilwyatt which they now concede to have been erroneous and for which they offer no substantive justification. As far as the record reveals, petitioners took no steps to verify that LaGrand had sufficient expertise or was sufficiently independent of Anderson Ark to justify their reliance. LaGrand did not testify at trial, and the specific nature of her advice to petitioners is unclear. We conclude that petitioners did not make a good faith effort to determine their 2000 tax liability, that it was not reasonable for them to rely on LaGrand, and that they are liable for the section 6662(a) penalty for substantial understatement of their 2000 tax liability.

To reflect the foregoing and concessions by petitioners,

<u>Decision will be entered for respondent</u>.